1
2
3
4
5
6
7

8        **UNITED STATES DISTRICT COURT**

9            **DISTRICT OF ARIZONA**

10

11

12  **Devin Pellerin, *et al.*,**                    )
                                                      )
13              **Plaintiffs,**                       )      **2:14-cv-02318 JWS**
                                                      )
14          **vs.**                                   )      **ORDER AND OPINION**
                                                      )
15  **Caryn Wagner, *et al.*,**                       )      **[Re:   Motions at Dockets 66, 68, 69,**
                                                      )              **and 76]**
16              **Defendants.**                       )
    ────────────────────────────────────             )

17

18              **I.  MOTIONS PRESENTED**

19          Before the court are four motions to compel filed by plaintiffs Devin Pellerin,

20  Angie Pellerin, X.X., and X.Y. (collectively, "Plaintiffs").  Plaintiffs' first motion, at

21  docket 66, seeks an order compelling defendant Caryn Wagner ("Wagner") to provide

22  further responses to various interrogatories pursuant to Rule 37(a)(3)(B)(iii).  Wagner

23  responds at docket 79; Plaintiffs reply at docket 81.

24          Plaintiffs' second motion, at docket 68, seeks an order compelling Wagner to

25  provide further responses to various requests for admission ("RFAs").  Wagner

26  responds at docket 77; Plaintiffs reply at docket 82.

27          Plaintiffs' third motion, at docket 69, seeks an order compelling defendant

28  Arizona Department of Economic Security ("ADES") to provide responses to several of

Plaintiffs' requests for production of documents ("RFPs").  ADES responds at docket 78; Plaintiffs reply at docket 83.

Plaintiffs' fourth motion, at docket 76, seeks an order compelling third-party Iris Garcia Maes ("Maes") to produce documents requested by subpoena.  Maes' non-opposition is at docket 85; Plaintiffs' reply is at docket 86.

Oral argument was requested, but would not assist the court.

## II.  BACKGROUND

Plaintiffs' six-count complaint alleges that Defendants violated their civil rights in the course of seizing the Pellerin children, X.X. and X.Y., from the Pellerin family home and placing them in foster care.[1]  Plaintiffs allege that on June 13, 2013, a juvenile court returned X.X. and X.Y. to their parents.[2]

## III.  STANDARD OF REVIEW

Rule 26(b)(1) provides that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"Information within this scope of discovery need not be admissible in evidence to be discoverable."[3]

If a party fails to make disclosures or cooperate in discovery, the requesting party may move to compel.[4]  "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and

---

[1]Doc. 1.

[2]*Id.* at 11-12 ¶ 39.  Defendants deny this allegation.  Doc. 15 at 4 ¶ 39.

[3]Fed. R. Civ. P. 26(b)(1).

[4]Fed. R. Civ. P. 37(a)(1).

1   supporting its objections."[5]  "Broad discretion is vested in the trial court to permit or

2   deny discovery[.]"[6]

3                                    **IV.  DISCUSSION**

4   **A.    Wagner's Boilerplate Objections**

5          Rule 33(b)(4) requires parties to state with specificity the grounds for objecting to

6   an interrogatory.  "Boilerplate, generalized objections are inadequate and tantamount to

7   not making any objection at all."[7]  The same is true with regard to boilerplate objections

8   to RFAs.[8]  Plaintiffs argue that Wagner should be ordered to supplement her responses

9   to interrogatories three, five, seven, and eight,[9] and RFAs nine through twelve, sixteen,

10  seventeen, and twenty-four, without her boilerplate objections.[10]

11

12  _____

13         [5]*DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

14         [6]*Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

15         [7]*Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999).  *See*
16  *also Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) ("[O]bjections should be plain
    enough and specific enough so that the court can understand in what way the interrogatories
17  are alleged to be objectionable.").

18         [8]*Marti v. Baires*, No. 1:08-CV-00653-AWI, 2012 WL 2029720, at *11 (E.D. Cal. June 5,
    2012) ("'The grounds for objecting to a request must be stated,' and [as] with other forms of
19  discovery, it is well established that boilerplate objections do not suffice.") (quoting Fed. R. Civ.
    P. 36(a)(5)) (collecting cases).
20

21         [9]*See* Wagner's response to interrogatory three, doc. 66-3 at 7 ("Objection, vague,
    ambiguous, overly broad and unduly burdensome."); Wagner's response to interrogatory five,
22  *id.* at 8 ("Objection; calls for a purely legal conclusion, overly broad and unduly burdensome.");
    Wagner's response to interrogatory seven, *id.* at 9 ("Objection.  Overly broad and unduly
23  burdensome."); and Wagner's response to interrogatory eight, *id.* ("Objection.  Compound,
    overly broad and unduly burdensome.").
24

25         [10]*See* Wagner's response to RFA nine, doc. 68-2 at 6 ("Objection; vague and
    ambiguous.); Wagner's response to RFA ten, *id.* at 7 ("Objection; vague and ambiguous.");
26  Wagner's response to RFA eleven, *id.* ("Objection; compound, vague and ambiguous."");
    Wagner's response to RFA twelve, *id.* ("Objection; compound, vague and ambiguous.");
27  Wagner's response to RFA sixteen, *id.* at 8 ("Objection; vague and ambiguous."); Wagner's
    response to RFA seventeen, *id.* ("Objection; vague and ambiguous.); and Wagner's response
28  to RFA twenty-four, *id.* at 9 ("Objection; compound, vague and ambiguous.").

                                          -3-

1    Plaintiffs' argument regarding Wagner's boilerplate objections is well-taken; each

2  of her objections to the above-referenced discovery requests is overruled.  But,

3  because Wagner did not withhold any information on account of these objections, this

4  ruling does not, by itself, establish that any of Wagner's discovery responses are

5  deficient.

6  **B.    Wagner's Responses to Plaintiffs' Interrogatories**

7        **1.    Wagner's references to Arizona law**

8    Interrogatories three, four, and five, respectively, ask Wagner to explain her

9  decision to remove X.X. and X.Y. from the custody of Angie Pellerin, identify all of the

10 evidence she had at the time that the children were "in imminent danger of sustaining

11 serious bodily injury," and state all facts that show she did not violate Angie Pellerin's

12 due process rights.[11]  Plaintiffs argue that Wagner should be required to supplement

13 her responses to these interrogatories because they refer to Arizona's probable cause

14 standard for removing children without a warrant, not the federal standard that Plaintiffs

15 say applies here.  Plaintiffs contend that Wagner's references to Arizona law make her

16 responses evasive and non-responsive.

17   Wagner's responses are not evasive or non-responsive.  An evasive discovery

18 response is one that interprets the request "in an artificially restrictive or hypertechnical

19 manner to avoid disclosure of information fairly covered by" the request.[12]  Wagner's

20 responses do not avoid disclosure of information.  Nor do they fail to respond to the

21 interrogatories presented.  Instead, Plaintiffs take issue with the substance of the

22 information that Wagner provides.  Because Rule 37 does not provide relief to a party

23 who merely disagrees with the substance of another party's discovery responses,

24 Plaintiffs' argument lacks merit.

25

26

27   [11]Doc. 66-3 at 7-8.

28   [12]*See* Fed. R. Civ. P. 37 cmt. to 1993 amendment.

1

        **2.     Interrogatories three and four**

2       While as noted, the court agrees that the boilerplate objections are inappropriate,

3  Wagner's answer to interrogatory three is responsive because it recites the facts

4  Wagner believes supported her decision.  It may be added that the last paragraph of

5  the answer regarding the safety plan is surplusage.  In any case, Wagner need not

6  supplement her answer to interrogatory three.

7       Plaintiffs' fourth interrogatory asks Wagner to "identify all specific, articulable

8  evidence that X.X. and X.Y. were in imminent danger of sustaining serious bodily injury"

9  when Wagner removed them from their mother's custody on May 10, 2013.[13]  Wagner's

10  response states: "See response to interrogatory No. 3."[14]

11      Plaintiffs argue that this response is improper because Wagner's answers to

12  interrogatories three and four cannot be identical as interrogatory three "asks for facts"

13  and interrogatory four asks for evidence.[15]  Wagner responds that this is a "distinction

14  without a difference."[16]  Neither party is entirely correct.  "Facts" and "evidence" are

15  separate, but intersecting sets.  In some instances the two sets will completely overlap

16  and thus be congruent.  In others, one set may be larger than the other.  For example,

17  there could be documents that are evidence, but the documents would not strictly

18  speaking be facts.  Wagner's response to interrogatory four incorporates her response

19  to interrogatory three.  Plaintiffs complain that this means the answer to four is not

20  "separately and fully" stated.[17]  Plaintiffs go too far.  There is nothing wrong with an

21  incorporation by reference per se.  However, that said, the court finds the answer to

22  interrogatory four to be incomplete.

23  _____

24      [13]Doc. 66-3 at 8.

25      [14]*Id.*

26      [15]Doc. 66-1 at 10.

27      [16]Doc. 79 at 4.

28      [17]Fed. R. Civ. P. 33(b)(3).

Wagner's response to interrogatory four does not identify all of the specific evidence upon which she relied in reaching her factual conclusion that X.X. and X.Y. were at risk of harm.  For instance, Wagner states that "CPS received a request for assistance from the U.S. Air Force Family Advocacy Center," but she does not mention any documents or other evidence to support this assertion.  Similarly, she states that "X.X. admitted that something bad happened in Japan," but does not make clear whether there is any evidence, such as interview notes, to support this assertion.  Wagner must supplement her answer to interrogatory four so that it fully responds to the specific question asked.

### 3.    Interrogatory five

Plaintiffs present the inverse argument regarding interrogatory five: they argue that Wagner's response improperly references evidence whereas the interrogatory itself calls for facts.[18]  Contrary to Plaintiffs' characterization, however, Wagner did not answer interrogatory five by merely pointing to a document.  Rather, she states that, among the facts that support her contention that she did not violate Angie Pellerin's due process rights is the fact that she gave the Pellerins a document that explains their rights.  This is indeed a statement of fact.  Wagner's answer is responsive.

### 4.    Interrogatories seven and eight

Plaintiffs' seventh interrogatory asks Wagner to state the number of children she "removed from the custody of their parent(s)" as an ADES social worker before May 20, 2013.[19]  After objecting that the question is overly broad and unduly burdensome, Wagner responds that she is unable to answer this question without reviewing every case assigned to her since she started working for ADES.[20]  Plaintiffs' eighth interrogatory asks Wagner to state the number of children she "removed from the

---

[18]Doc. 66-1 at 11.

[19]Doc. 66-3 at 9.

[20]*Id.*

custody of their parent(s) without first obtaining a warrant or other court order authorizing" that removal since she started working for ADES.[21]  After objecting that the question is compound, overly broad, and unduly burdensome, Wagner responded that she does not recall ever obtaining a warrant before taking temporary custody of a child.[22]

When answering interrogatories, a party is charged with knowledge of what is in records available to it.[23]  "Though there are limits on the extent to which a party can be required to hunt out information in order to answer interrogatories, it will be required to provide facts available to it without undue labor and expense."[24]  If a party is unable to provide the requested information, it must describe under oath the efforts it undertook.[25]

Wagner's responses to interrogatories seven and eight are insufficient under these standards.  Although her response to interrogatory seven states that she would be required to review every case assigned to her, she does not explain how long this review would take or the burden it would present.  With regard to interrogatory eight, Wagner states that she does not remember obtaining any warrants, but she does not show that she has satisfied her duty of reviewing the records reasonably available to her before responding.

Plaintiffs argue that it is clear Wagner "did not undertake any efforts to delve into the potential sources of responsive information, including the system database she presumably works with every day."[26]  Wagner does not deny this assertion in her

---

[21]*Id.*

[22]*Id.*

[23]8B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE CIVIL § 2177 (3d ed. 2015).

[24]*Id.*

[25]*See Bryant v. Armstrong*, 285 F.R.D. 596, 612 (S.D. Cal. 2012).

[26]Doc. 66-1 at 13.

1 opposition.[27]  Presumably, the number of times Wagner has removed a child, and the
2 number of times she has obtained a warrant before doing so, can be ascertained from
3 a review of the relevant database or other records.  Because Wagner has not met her
4 burden of showing that such a review would be unduly burdensome, she must review
5 the records available to her and provide Plaintiffs with the requested information.

6 **C.   Wagner's Responses to Plaintiffs' RFAs**

7     **1.   RFAs nine, ten, eleven, and twelve**

8     RFAs nine through twelve ask Wagner to admit that on May 10, 2013, she had
9 no reason to believe that X.X. and X.Y. were "in immediate danger of sustaining serious
10 bodily injury at the hands of [their] mother, Angie Pellerin."[28]  Wagner denies these
11 RFAs, stating that "probable cause existed to believe" that the children were victims "or
12 would imminently become" victims of "abuse and neglect."[29]  Plaintiffs argue that
13 Wagner's responses are non-responsive and evasive.  The Court agrees.

14     If a party does not admit to a matter found in a RFA, its answer "must specifically
15 deny it or state in detail why the answering party cannot truthfully admit or deny it."[30]
16 The denial "must fairly respond to the substance of the matter; and when good faith
17 requires that a party qualify an answer or deny only a part of a matter, the answer must
18 specify the part admitted and qualify or deny the rest."[31]

19     Wagner's denials do not fairly respond to the substance of the matters presented
20 in RFAs nine through twelve.  These RFAs ask Wagner whether the children were "in
21 immediate danger" of suffering "serious bodily injury at the hands of" their mother;
22 Wagner responds to a different question: whether probable cause existed to believe the

23 _____

24 [27]Doc. 79 at 5-6.

25 [28]Doc. 68-2 at 6-7.

26 [29]*Id.*

27 [30]Fed. R. Civ. P. 36(a)(4).

28 [31]*Id.*

children were victims or would imminently become victims of abuse and neglect. Wagner must supplement her responses to these RFAs so that they fairly respond to the actual matters presented.

### 2. RFAs sixteen, seventeen, and twenty-four

Wagner's responses to RFAs sixteen, seventeen, and twenty-four are non-responsive for the reasons discussed above.  Wagner's opposition states that "after further consideration" she will "voluntarily amend" her responses to these RFAs "to eliminate the objection mooting the motion to compel."[32]  The meaning of this statement is unclear to the court, and Wagner's amended responses are not in the record.  In any event, Wagner's amended responses to RFAs sixteen, seventeen, and twenty-four must also fairly respond to the actual matters presented.

### D.   ADES' Responses to Plaintiffs' RFPs Thirty-Seven, Thirty-Nine, and Forty

RFP thirty-seven seeks production of all documents "stating, depicting, and/or constituting *the number of children removed* by ADES, CPS, and/or DCS from the custody of their parent(s), without judicial authorization, between January 1, 2008 through December 31, 2013."[33]  ADES provided Plaintiffs with nothing other than the following response: "Objection: overly broad, seeks confidential information, unduly burdensome, irrelevant and not reasonably calculated to lead to relevant or admissible evidence[,] vague and ambiguous.  This would require review of every report of abuse or neglect that has been investigated by CPS or DCS over a five year period."[34]  (In fact, there are about six years between January 1, 2008 and December 31, 2013.)

RFP thirty-nine seeks production of all documents that depict "the number of child interviews conducted by ADES, CPS, and/or DCS at school;" and Plaintiffs' RFP forty seeks documents that depict the number of such interviews conducted "without

---

[32]Doc. 77 at 6-7.

[33]Doc. 69-1 at 18 (emphasis added).

[34]*Id.*

1   judicial authorization or parental consent," between January 1, 2008 and December 31,

2   2013.  ADES responds to these two RFPs by repeating its response to RFP thirty-

3   seven verbatim.

4       In response to Plaintiffs' motion to compel, ADES maintains the following three

5   objections.[35]

6       **1.    Vague and ambiguous**

7       ADES argues that the following passage from the RFPs—"stating, depicting

8   and/or constituting the number of . . ."—is vague and ambiguous because those words

9   "could mean almost anything."[36]  This argument is unpersuasive.  Although Plaintiffs'

10  language may be redundant, the quoted passage clearly seeks documents that reveal a

11  certain quantity.  This objection is overruled.

12      **2.    Undue burden**

13      ADES next argues that these RFPs are unduly burdensome because Arizona

14  "investigates nearly 30,000 reports of abuse or neglect every year" and responding to

15  Plaintiffs' RFPs would "require someone to review every file over the requested period

16  and pull out case notes for every CPS investigator who has interviewed a child . . . to

17  determine if the note states where the interview was conducted, who was present, and

18  whether or not there had been any prior judicial involvement."[37]  This objection is

19  irrelevant and overruled with respect to RFP thirty-seven because that RFP seeks

20  documents that show the number of children removed from their parents, not

21  interviewed.

22      With respect to RFPs thirty-nine and forty, Rule 26(b) requires the court to

23  determine whether the requested discovery is proportional to the needs of the case,

24  _____

25      [35]Doc. 78 at 4-5.  ADES waives its relevancy and over-breadth objections by not raising

26  them in its response to Plaintiffs' motion.  *Cf. Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

27      [36]Doc. 78 at 4.

28      [37]*Id.* at 5.

-10-

considering, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit."[38]  "A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them."[39]  Conversely, a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination;"[40] that party cannot rely on conclusory allegations of burden or expense, "but must provide some evidence regarding the time or expense required."[41]

For their part, Plaintiffs argue that the information requested in RFPs thirty-nine and forty is important to this case because it will show "the regularity with which minors are interrogated without judicial authorization or parental consent."[42]  This is relevant to the allegation in Plaintiffs' complaint that ADES has a practice of conducting unconstitutional interrogations or examinations of children "outside the presence of [their] parent(s)—without judicial authorization or parental consent—when there is no

---

[38]Fed. R. Civ. P. 26(b)(1).  *See also* 8B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE CIVIL § 2214 (3d ed. 2015) ("In ruling on an objection that claims of . . . undue burden or expense should bar discovery . . . the court cannot avoid taking into account the moving party's need for the inspection it seeks.").

[39]Fed. R. Civ. P. 26 cmt. to 2015 amendment.

[40]*Id.*

[41]*Doe v. Nebraska*, 788 F. Supp. 2d 975, 981 (D. Neb. 2011).  *See also Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528-29 (D. Nev. 1997) ("The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."); 8B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE CIVIL § 2035 (3d ed. 2015) ("The courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause" supporting a protective order.) (compiling cases).

[42]Doc. 69-2 at 12.

-11-

1    specific, reasonable, and articulable evidence that the [children are] in immediate risk of
2    suffering serious bodily injury."[43]

3        In response, ADES submits no evidence of its claimed burden, only an assertion
4    from its counsel.  Further, although ADES' counsel roughly estimates the number of
5    case files that exist (he states that ADES conducts "nearly" 30,000 investigations per
6    year, which would translate to approximately 180,000 case files for the relevant time
7    period), he does not provide the court with any estimate of how long it would take ADES
8    to review these files to determine which cases involved school interviews conducted
9    without judicial or parental consent.  Based on the absence of evidence in the record
10   and ADES' deficient filing, the court is unable to determine the burden presented.
11   However, given the sheer volume of material suggested by defense counsel, the court
12   concludes that ADES should be afforded a chance to restate and properly support the
13   undue burden objection with evidence in the form of affidavits from ADES personnel or
14   other actual evidence.  In sum, Plaintiffs have demonstrated that the requested
15   discovery is important to the resolution of an issue in this case, and ADES has not yet
16   established that the burden or expense of producing the discovery outweighs the likely
17   benefit.  ADES' objection is overruled with leave to make a properly supported undue
18   burden objection.

19           **3.    Confidentiality**

20       Finally, ADES argues that the information requested in RFPs thirty-seven, thirty-
21   nine, and forty "is case specific, [and] would require disclosure of documents that
22   contain personally identifiable information about the children being investigated."[44]
23   ADES appears to be maintaining its objection that Plaintiffs are seeking confidential
24   information, but this is unclear as its one-sentence argument is unaccompanied by
25   citation to any evidence or authority.

26   _____

27   [43]Doc. 1 at 22 ¶ 69.d.

28   [44]Doc. 78 at 5.

Plaintiffs insist that they are not seeking confidential information, such as names, addresses, or case details, but rather documents that merely show the frequency of certain events.  ADES does not respond to this argument.  Plaintiffs also argue that because federal law supplies the rule of decision in this case, Arizona privileges or confidentiality rules need not be honored.  Like ADES, Plaintiffs do not identify any specific Arizona confidentially rules.

The Arizona confidentiality statute to which the parties may be alluding could be A.R.S. § 8-542, which broadly declares as confidential any information involved in any termination proceeding or "indirectly derived from the files, records, reports or other papers compiled pursuant to" Article 5, Chapter 4, Title 8 of the Arizona Revised Statutes.[45]  Or, it could be A.R.S. § 8-807, which states that "[a] person who receives DCS information shall maintain the confidentiality of the information and shall not further disclose the information unless the disclosure is authorized by law or a court order."[46]  Although Plaintiffs correctly note that these state statutes are not binding here, because Plaintiffs' action arises under federal law, "even in cases where federal law applies, constitutional and prudential considerations suggest that courts should carefully assess any attempt to compel disclosure of confidential juvenile court proceedings."[47]

ADES has not shown that its confidentiality concerns outweigh the need for the requested discovery; its objection is overruled.  But, based on the fact that the requested discovery may be confidential under Arizona law, at least in part, the parties must confer about a potential protective order that would require redaction of the requested records or otherwise protect confidential information.

---

[45]A.R.S. § 8-542(A).

[46]A.R.S. § 8-807(U).

[47]*Gonzalez v. Spencer*, 336 F.3d 832, 835 (9th Cir. 2003) *abrogated as to other matters by Filarsky v. Delia*, 132 S. Ct. 1657 (2012) (quoting 23 Charles Alan Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5428 (1st ed. 1980)).

-13-

**E.   Maes' Documents**

Maes was appointed guardian ad litem for X.X. and X.Y. during their dependency proceedings.[48]  After Plaintiffs served on her a subpoena to produce their files,[49] she resisted producing them because A.R.S. §§ 8-542 and 8-807 prohibit their disclosure absent a court order.  Because Maes does not oppose Plaintiffs' current motion to compel these records,[50] Plaintiffs' motion will be granted.

**F.   Payment of Expenses**

Rule 37(a)(5)(A) provides that if a motion to compel is granted the court must award reasonable expenses to the moving party unless "(I) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  When a motion to compel is granted in part and denied in part, Rule 37(a)(5)(C) provides that the court has discretion to award such expenses.[51]

The parties here do not request an award of expenses under Rule 37(a)(5). After considering the matter, the court concludes that, given the large number of discovery requests and the breadth of the discovery requests at issue, there was substantial justification for the failure to provide complete responses, and further that under all the circumstances of this litigation an award of expenses would be unjust.

## V.  CONCLUSION

Based on the preceding discussion, Plaintiffs' motion to compel at docket 66 is **GRANTED IN PART AND DENIED IN PART** as follows: Plaintiffs' motion to compel

---

[48]Doc. 76-2 at 2 ¶ 3.

[49]*Id.* at 6.

[50]Doc. 85.

[51]Fed. R. Civ. P. 37(a)(5)(C) ("If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.").

-14-

Wagner to supplement her answers to interrogatories four, seven, and eight is **GRANTED**, but in all other respects their motion is **DENIED**.  Plaintiffs' motion at docket 68 to compel Wagner to supplement her answers to RFAs nine through twelve, sixteen, seventeen, and twenty-four is **GRANTED**.  Plaintiffs' motion at docket 69 to compel ADES to supplement its responses to RFPs thirty-seven, thirty-nine, and forty is **GRANTED** provided that ADES may state a properly supported undue burden objection to RFPs thirty-nine and forty.  Plaintiffs' motion at docket 76 to compel Maes to produce the documents subject to Plaintiffs' subpoena is **GRANTED**.

The parties are **ORDERED** to confer about the parameters of a protective order. The discovery responses compelled by this order will be due 28 days after the court approves the protective order proposed by the parties.  The court recognizes that not all responses are likely to be subject to this protective order.

DATED this 14th day of March 2016.


/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE